Roberta EDWARDS, Appellant,

v.

ANDREWS, DAVIS, LEGG, BIXLER, MILSTEN & MURRAH, INC., Appellee.

Roberta EDWARDS, Respondent-Appellant,

v.

ANDREWS, DAVIS, LEGG, BIXLER, MILSTEN & MURRAH, INC., Movants-Appellees.

Nos. 54858, 54859.

Supreme Court of Oklahoma.

June 1, 1982.

Rehearing Denied Sept. 24, 1982.

858

William J. Skepnek, Linn, Helms, Kirk & Burkett, Oklahoma City, for appellant.

William B. Rogers, R. Steven Haught, Oklahoma City, for appellee.

HARGRAVE, Justice.

## I. NO. 54,858

From an order of the District Court of Oklahoma County sustaining the demurrer of defendant and dismissing the cause of plaintiff, Roberta Edwards, this appeal is prosecuted. The demurrer of Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc., was sustained upon the ground that the action for damages incurred as a result of alleged legal malpractice was barred by the applicable statute of limitations, 12 O.S. 1971 § 95, 3rd.

The defendant firm represented plaintiff in four actions in Colorado and Oklahoma. On October 12, 1976, defendant advised plaintiff to enter into a settlement of these actions. Plaintiff also alleges in her amended petition that defendant failed to exercise reasonable care in drafting the settlement and warranty deed that accompanied it and that failure to obtain collateral on the settlement prior to dismissal of the actions with prejudice finally required suit to be brought to enforce the settlement on December 15, 1976. Defendants' representation of plaintiff was terminated September 7, 1977. This action pleading damages resulting from legal malpractice was commenced August 23, 1979. The defendant filed a general demurrer and brief in support thereof, arguing the statute of limitations issue.

The trial court sustained the demurrer, stating the petition discloses upon its face that the statute of limitations bars the prosecution of this action.

 The appellant proposes in her brief to this Court that it is accepted law in Oklahoma that the statute of limitations is tolled when a party has fraudulently concealed the plaintiff's cause of action from her. It is material on this point to note plaintiff's initial petition attempted to plead fraudulent concealment and the order sustaining a demurrer to that petition states plaintiff has failed to sufficiently plead fraudulent concealment so as to toll the statute of limitations. These allegations found in paragraph 8 of the petition are omitted from the amended petition which does not incorporate the prior pleading by inclusion *in totem verbis* or by incorporation by reference. Filing of an amended petition complete in itself, not referring to the original petition or prior amendments, is an abandonment of all prior averments not contained in the amended petition. See *Scott v. Price,* 123 Okl. 172, 247 P. 103 (1926). Accordingly, no reference can be made to the original pleading abandoned by filing a substituted pleading in determining whether the demurrer to the amended petition should be sustained. *Seekatz v. Brandenburg,* 150 Okl. 53, 300 P. 678 (1931). In the absence of express allegations of fact in the petition pointing to fraudulent concealment, plaintiff urges the reasoning in *Seitz v. Jones,* 370 P.2d 300 (Okl.1962) is applicable to this action. Plaintiff contends that *Seitz* allows an inference of fraudulent concealment to arise from silence occurring within the doctor-patient relationship and urges us to extend that concept to the attorney-client relationship so as to toll the running of the statute of limitations. Although *Seitz* states the petition did not include the words fraudulent concealment, that case nevertheless finds the statute tolled. This result does not arise from an inference of fraudulent concealment. Rather the opinion demonstrates that the facts underlying the concealment were pled. There the negligence alleged was allowing a metal object (a hypodermic needle) to remain in plaintiff after an operation. The plaintiff pled an x-ray taken in June revealed the object's presence and this information was withheld until September. The Court stated: "We are of the opinion that the allegations in the petition clearly show that the plaintiff was prevented from knowing the negligence of the defendants..." *Seitz, supra,* at 302, therefore does not propose inferring fraudulent concealment.

 Appellant additionally argues the concept of continuous treatment as applied

to physician and patient relationships should be extended to legal malpractice on the grounds there is no reason to differentiate between the two professions in this respect. The premise that is utilized to support that contention is the citation of *Perkins v. United States,* 76 F.R.D. 590, at 592 (1976). That case states that the Federal District Court was referring to Federal law. No Oklahoma citation for such a point is referred to and consequently, the appellant's point that the two professions should not be distinguished fails for lack of any demonstration of differentiation in Oklahoma law. The continuous treatment concept mentioned in *Perkins, supra,* has not been demonstrated to be part of the body of Oklahoma law. Conversely the limitation period in medical malpractice actions as determined by statutory authority negates the application of the continuous treatment doctrine in Oklahoma. See 76 O.S.Supp. 1976 § 18.

■ Appellant lastly contends that under the authority of *Covey v. C.I.T. Corp.,* 71 F.R.D. 487 (E.D.Okl.1975), defendants are estopped from asserting the limitation question. As previously noted, the amended petition is devoid of allegations of fraud. As recently noted in *State ex rel. Western State Hospital v. Stoner,* 614 P.2d 59 (Okl. 1980), for equitable estoppel to apply to a factual situation there must be a false representation, or concealment of facts made with actual or constructive knowledge of its falsity, where the receiving party is of necessity without knowledge of the truth or the means of making that determination, and the statement must be made with the intent that it be acted upon, and the receiving party must have acted upon the representation to his detriment. Construed in the light most favorable to the plaintiff it is apparent the pleading does not state facts which would bring the doctrine of equitable estoppel into play here. The petition states that defendant failed to inform plaintiff of its negligent actions and that it represented to plaintiff that the problems would be resolved by the firm. In neither case are there facts pled which bring the doctrine of equitable estoppel into play.

The petition discloses upon its face the statute of limitations bars the prosecution of this action and does not contain averments raising a factual question of the tolling of the statute. Consequently, the ruling of the trial court sustaining the demurrer to the petition and its subsequent dismissal on the ground of the statute of limitations is AFFIRMED.

IRWIN, C. J., and LAVENDER, DOOLIN and OPALA, JJ., concur.

BARNES, SIMMS, and HODGES, JJ., dissent.

WILSON, J., certifies her disqualification.

## II. NO. 54,859

*Roberta Edwards v. Richard Walden.*

This appeal raises as error the confirmation of an attorneys' lien in this action covering services rendered not only in this action but other cases which were all resolved by the settlement agreement enforced here. Appellant contends the attorneys' lien could only reach services rendered in the enforcement of the settlement agreement.

This action was commenced for the purpose of enforcing a settlement agreement made between Richard Walden and Roberta Edwards. This settlement resulted in the dismissal of four other lawsuits the plaintiff, Roberta Edwards, had pending against Mr. Walden in Federal Court, Colorado and Oklahoma State Courts. In preparation for the trial of these actions, Dr. Edwards' attorneys, the firm of Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc., scheduled the deposition of plaintiff and the non-resident defendant for the Thursday preceding the week of trial on one of the actions. At the time and place set for this hearing, the plaintiff and defendant conferred without their respective attorneys and struck a settlement of their disputes including a dismissal of the four actions against defendant. The cases were dismissed and subsequently it became necessary to bring suit to

enforce the settlement. Judgment was granted upon the motion for partial summary judgment and the law firm filed a motion to allow fees and sought recovery of those fees through its lien on the judgment proceeds, confirmed by District Court order of June 16, 1978. That order confirmed lien on the funds in possession of the court clerk to secure payment of a reasonable fee for all services rendered by that firm resulting in the creation of the fund on deposit.

From that order, Dr. Edwards filed an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition and Mandamus, arguing here the attorneys' lien did not extend to work performed in the lawsuits which were settled as a result of the settlement agreement. The application to assume original jurisdiction was denied. Appellant Edwards then filed a cross petition alleging negligence in drafting the settlement agreement. Appellant confessed the demurrer to that petition and filed these allegations in a separate action, # 54,858, discussed here as a companion case.

Evidence was taken at the hearing relative to the complexity of the cause and the hours spent by the firm. The law firm had expended 90 hours of senior partner time, 219 hours of associate time, and 8 hours of intern time. The law firm presented two expert witnesses to testify as to the reasonable value of legal services in the community on cases of comparable intricacy. One expert assessed the reasonable value of these services in view of the time spent to be $16,536.00 to $20,078.00, noting the complexity would point to the higher figure. The second expert stated that with the responsibilities incipient in this case, the complexity, time and results, the fee reasonable in the community would be $17,380.00. The appellant testified, without experts, that she felt the results did not justify an award of that magnitude, and further, that the firm had represented to her that it would collect on the settlement agreement without charge. The trial court found a reasonable fee to be $18,078.00, less a credit of $2,862.00 already paid, granting judgment for $15,215.50.

In this appeal from the above described award of attorneys' fees, appellant argues the court lacked authority to charge the judgment with the general balance owed by Dr. Edwards to the appellee firm. It is undisputed in the record that the settlement agreement encompassed all claims then handled by the law firm against Mr. Walden. Appellee asserts the judgment lien in this case covered only those services related to the suit to enforce the settlement and is not chargeable with the attorney fees incurred in the four actions dismissed under the settlement agreement.

This proceeding seeks to enforce the statutory attorney's lien found in 5 O.S. 1971 § 6. The appellee refers this Court to New York authority in his brief filed in this Court, to demonstrate the viability of the trial court's determination that fees were properly brought under the attorney's lien in this cause when earned in prior proceedings culminating in this action to enforce the settlement agreement. The New York statute is found in New York Judiciary Law § 475 (McKinney, 1968), last amended in 1946, as follows:

"From the commencement of an action, special, or other proceeding in any court, before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court, upon the petition of the client or attorney, may determine and enforce the lien."

The differences between the New York Statute and the Oklahoma Statute, 5 O.S. 1971 § 6, are slight. Where a counter claim is involved, the lien attaches in Oklahoma upon filing of the claim, and in New York

attaches upon service of the claim. The New York provision attaches in all actions, and in Oklahoma the words "attorney's lien claimed" must be endorsed on the petition, or after filing, notice must be served. The Oklahoma statute reads:

"From the commencement of an action, or from the filing of an answer containing a counterclaim, the attorney who represents the party in whose behalf such pleading is filed shall, to the extent hereinafter specified, have a lien upon his client's cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client's favor; and the proceeds thereof, wherever found, shall be subject to such lien, and no settlement between the parties without the approval of the attorney shall affect or destroy such lien, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he shall set forth the nature of the lien he claims and the extent thereof; and said lien shall take effect from and after the service of such notice, but such notice shall not be necessary provided such attorney has filed such pleading in a court of record, and endorsed thereon his name, together with the words 'Lien claimed.'"

These statutes closely track each other and the case law of both states considers the statutes to be declaratory of the common law. *Roxana Petroleum Co. v. Rice,* 109 Okl. 161, 235 P. 502 (1924), *Jackson v. City of New York,* 182 Misc. 686, 45 N.Y.S.2d 505 (1943), *Ozorowski v. Pawloski,* 207 Misc. 407, 139 N.S.S.2d 31, app.dism. 2 A.D.2d 905, 157 N.Y.S.2d 923 (1955). (Except that at common law, mere commencement of an action did not cause the lien to attach. *Randall v. Van Wagenen,* 115 N.Y. 527, 22 N.E. 361 (1889).) Additionally, both states see the purpose of the statute in the same light. The attorney's charging lien is based upon the equitable doctrine that an attorney should be paid out of the proceeds of the judgment secured by that attorney. *White v. White,* 107 Misc.2d, 551, 435 N.Y. S.2d 535 (1981). In the same vein, this Court has stated the lien created by § 6 of Title 15, Oklahoma Statutes, is founded upon the equitable right of the attorney to be paid his fees and disbursements out of the judgment he has obtained for his client; when his skills and service produce a judgment the attorney, by taking appropriate measures, may see that a lien attaches to the fruits of his efforts. *Campanello v. Mason,* 571 P.2d 449 (Okl.1977). Considering the statutory similarity as well as the case law equating the purpose of both lien statutes, we find appellees' citation of New York law as persuasive authority. Appellee points us to *Neimark v. Martin,* 183 N.Y. S.2d 812, 7 A.D.2d 934 (1959), wherein the court stated the learned referee limited appellant attorney's fees to the value of the services rendered only in the action which resulted in a settlement. The court stated: "There is no authority for such a limitation in the statute. Appellant is entitled to a recovery, in this action, for the value of all services rendered by him pursuant to his original retainer. The attorney's lien attaches to the client's cause of action, and any recovery thereon, albeit the recovery is effected in an action other than the action in which the services were rendered. This is especially so where the recovery is in an action which is a logical sequence of a prior action in connection with which the services were rendered." (Citations omitted.)

We consider this logic compelling; both jurisdictions have stated the lien is not a lien for the general balance of all accounts owing the lawyer from the client but only for the value of the services rendered in the particular action which produced the recovery charged. *Regan v. Marco M. Frisone, Inc.,* 54 A.D.2d 1125, 388 N.Y.S. 798 (1976). Accord, *State ex rel. Mothersead v. Dyer,* 126 Okl. 260, 259 P. 212 (1927). We therefore hold the trial court did not err in recognizing the attorney's charging lien extended to all services which resulted in recovery of the judgment. This holding necessarily refutes appellant's allegation that the court of necessity was improperly attempting to enforce a retaining lien for a general balance owed by the client when the funds were not in possession of the attorney.

■ Appellant contends she was improperly denied the right to a jury trial on the cause. Although enforcement of a charging lien is an equitable proceeding, *Stubblefield v. General Motors Acceptance Corp.*, 619 P.2d 620 (Okl.1980), under the state of the record in this action we hold denial of jury trial here was not erroneous by virtue of the fact the appellant filed a waiver of jury trial and it is thus unnecessary to discuss the merits of that proposed argument.

■ Appellant additionally contends the trial court erred in refusing to allow evidence of the appellant of the amount of expense she incurred in the prosecution of these proceedings. These expenses were for telephone, travel, surveys, and related expenses. Admissibility of evidence in a cause tried to the court is within the sound discretion of the court, not to be disturbed unless there exists a clear abuse of discretion. *First State Bank of Noble v. McKiddy*, 206 Okl. 57, 240 P.2d 1103 (1952). We find no such abuse. The appellant as a client is liable for the fees and expenses incurred in the action. It is well within the judge's legal discretion to rule these expenses would rest, in the ultimate analysis, with appellant, and the fact that some of the expenses were incurred directly by appellant only reduced the ultimate legal expense recoverable by appellees and was not directly relevant to the issue of fees and expenses incurred by the law firm in prosecution of this matter.

The judgment of the trial court is in all respects AFFIRMED.

All Justices concur except WILSON, J., who certifies her disqualification.